UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898 MDL 1358 (SAS) M21-88 |

---------------------------------------------------------------------- x   ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

---------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO DESIGNATE SUBSTITUTE EXPERT WITNESS**

I.     INTRODUCTION

Plaintiff the City of New York (the "City") hereby moves the Court for leave to designate Dr. Kenneth M. Rudo, Ph.D., as its testifying expert on the toxicity and human health effects of MTBE in place of the City's currently designated expert on these topics, Dr. Kathleen Burns, Ph.D. Dr. Rudo is an environmental toxicologist employed by the State of North Carolina who intends to offer opinions about the toxicity of MTBE at low exposure levels that are substantially identical to those described by Dr. Burns in her expert reports and deposition in this case to date. Moreover, Dr. Rudo intends to offer the very same opinions he gave in another recent MTBE lawsuit against Defendant Exxon Mobil Corporation ("Exxon"), wherein he was both deposed and extensively cross-examined at trial by the very same Exxon lawyers who are trying this case.

The rapid pace and unfolding structure of this trial over the past several days have given rise to an unanticipated scheduling conflict that will prevent Dr. Burns from testifying in the early stages of Phase III. In addition, Dr. Burns indicated to the City this week that she no longer wishes to work with the City or its attorneys and is unwilling to be examined by the City's attorneys at trial, even in the event that her scheduling conflicts can be resolved or accommodated. Her unwillingness to testify is attributable *not* to any alteration of her opinions, but solely to a breakdown in the relationship between Dr. Burns and the City's lawyers.[1] Because this conflict was not readily foreseeable by the City, and because Exxon will not be prejudiced by the substitution of an expert witness with whom its trial team is already extremely familiar, this Court should grant the City's motion and allow the substitution of Dr. Rudo for Dr. Burns.

---

[1] In recent weeks, Dr. Burns has become increasingly uncooperative with counsel, culminating this week in her refusal to work with the City's trial team for purposes of her preparation and testimony at trial. (Declaration of Robert Chapman, submitted concurrently herewith, at ¶¶ 2-3; Declaration of Susan Amron, submitted concurrently herewith, at ¶ 2.)

- 1 -

## II.     ARGUMENT

### A.     Background

The Phase III Joint Pretrial Order in this case, filed June 27, 2009, identifies Kathleen Burns as an expert witness for the City who "will testify as to the toxicological characteristics of MTBE and gasoline containing MTBE." (Joint Pretrial Order for Phase III, p. 31).

On Monday, August 10, both parties and the Court agreed that the toxicology issues on which Dr. Burns was originally designated to testify would be tried at the outset of Phase III. (Draft Trial Transcript, August 10, 2009, pp. 49-51.) Phase II of this trial began on August 12, 2009, and is expected to continue for approximately one to two weeks. (Draft Trial Transcript, August 10, 2009, pp. 68-69.)

On Monday, August 10, Dr. Burns informed counsel for the City that she had professional and personal conflicts which would make her unavailable to either prepare her testimony or testify any time prior to the second week of September. (Chapman Dec. at ¶ 2.) On August 11, 2009, Dr. Burns informed the City that she would not change her personal and professional schedule in order to accommodate the trial. (Amron Dec. at ¶ 2.) She further informed the City that she is unwilling to travel to New York to prepare for trial, and unsure whether she wished to appear at trial at all, regardless of schedule. (Chapman Dec. at ¶ 3; Amron Dec. at ¶ 2.)

Dr. Kenneth M. Rudo is an environmental toxicologist employed by the State of North Carolina with substantial experience serving as expert witness in MTBE–related litigation. (Declaration of Kenneth Rudo, submitted concurrently herewith, at ¶¶ 2, 5, 6.) In fact, he submitted an expert affidavit, was deposed, and testified at trial just last year in another MTBE lawsuit against Exxon, *Alban et al. v. Exxon et al.*, No. 03-C-06-010932, in the Circuit Court for Baltimore County,

Maryland (Hon. Maurice W. Baldwin, Jr.) ("*Alban*").  (Rudo Dec. at ¶¶7-11.)[2]   In *Alban*, Dr. Rudo was extensively cross-examined at deposition and trial by William Stack, Esq., a member of Exxon's trial team in this case.  (*Id.*)  Dr. Rudo intends to offer the following opinions in this case:

1. MTBE is considered a possible, if not probable, human carcinogen and is a known animal carcinogen.

2. There is no known safe level of exposure to MTBE.

3. Even at low levels, MTBE in drinking water may pose an increased cancer risk.

4. The approach most protective of public health must include testing for the levels of MTBE in monitoring and supply wells of the area by regular sampling and analysis and filtration.

(Proposed Expert Report of Kenneth M. Rudo, Exhibit 6 to Rudo Dec. at ¶¶ 4-6.)  Dr. Rudo's proffered opinions are substantially identical to the opinions he gave in *Alban*.  They are also substantially the same as the opinions Dr. Burns was expected to offer in this case, just as the supporting materials on which he relies are coextensive with those on which Dr. Burns relied.  Indeed, each and every reference Dr. Rudo cites in support of his proffered opinions has already been produced by the City as part of Dr. Burns' expert production.

### B. Legal Standard

Federal Rule of Civil Procedure 16(e) mandates that the pretrial order "shall control the subsequent course of the action ... [and] shall be modified only to prevent manifest injustice." Fed. R. Civ. Pro. 16(e). This does not mean, however, that a pretrial order is a legal "strait-jacket" that unwaveringly binds the parties and the court, rather, the Court retains a "certain

---

[2] In order to comply with this Court's local rules, the transcripts of Dr. Rudo's deposition and trial testimony, attached as Exhibits 2-5 to his Declaration, have been truncated and excerpted. The City will immediately make full copies of these transcripts available upon request of Exxon or the Court.

amount of latitude to deviate from a pre-trial order," *Manley v. AmBase Corp.,* 337 F.3d 237, 249 (2d Cir.2003); *see also Castlegate, Inc. v. National Tea Co.,* 34 F.R.D. 221, 226 (D.Col.1963), so as to prevent manifest injustice. *See* Fed. R. Civ. Pro. 16(e).  The decision to permit amendment of a proposed joint pretrial order rests within the discretion of the Court and should be granted when "the interests of justice make such a course desirable." *Madison Consultants v. Fed. Deposit Ins. Corp.,* 710 F.2d 57, 62 n. 3 (2d Cir.1983).   In making such a determination, the court should balance "the need for doing justice on the merits" against judicial efficiency. *Laguna v. American Export Isbrandtsen Lines, Inc.,* 439 F.2d 97, 101 (2d Cir. 1971) (quoting 3 J. Moore, Federal Practice P16.20, at 1136 (3d ed.1968)). The Court should also "consider whether any prejudice to the opposing side will result." *Ismail v. Cohen,* 706 F.Supp. 243, 255 (S.D.N.Y.1989).

### C.  The City Will Be Unfairly Prejudiced Unless Dr. Rudo Is Substituted for Dr. Burns

Where there is "no indication that the last-minute substitution was either willful or prejudicial," New York courts have allowed one expert to be substituted for another where extenuating circumstances warranted it.  *See Mateo v. 83 Post Ave. Associates*, 12 A.D.3d 205, 205-206; 784 N.Y.S.2d 520, 521 (1st Dept. 2004) (citing *Gilbert v. Luvin,* 286 A.D.2d 600, 601, 730 N.Y.S.2d 85 (2001)).  In *Mateo*, "the physician who had treated plaintiff and whom plaintiff originally identified as her expert advised plaintiff's attorney, on the very eve of trial, that he was going to be taking a longer vacation than expected and would not be available for the trial." *Id.* Plaintiff's attorney in that case, much as the City's attorneys are doing now, "immediately advised the trial court and opposing counsel of the witness's unavailability and of plaintiff's retention of another physician as a substitute witness, attaching to his letter a new CPLR 3101(d)

response and the new expert's curriculum vitae." *Id.*  Substantially, "the new expert's expected testimony . . . was in all essential respects similar to the expected testimony of plaintiff's treating physician…," and given these safeguards, "[t]he trial court properly permitted plaintiff's new expert to testify, there being no indication that the last-minute substitution was either willful or prejudicial." *Id.*  Here, likewise, the substitution of Dr. Rudo for Dr. Burns is not willful or prejudicial (as discussed below) and Dr. Rudo's expected testimony is essentially similar to that of Dr. Burns.

As in *Madison Consultants, supra,* "the interests of justice" mandate allowing the City's proposed substitution.  *Madison Consultants,* 710 F.2d at 62 n. 3.  The toxicological characteristics of MTBE and gasoline containing MTBE are key issues in this case, as evidenced by the placement of toxicological issues at the outset of Phase III.  Both sides plainly consider establishing the safety or toxicity of MTBE very important to the jury's assessment of the extent of the City's injury.  Moreover, the City agrees that toxicological issues should be discussed at the outset of Phase III – which, depending on the length of Phase II, may begin as early as August 20.

But, as discussed above, Dr. Burns has indicated to counsel for the City that she has a scheduling conflict that will prevent her from testifying, that she is unwilling to rearrange her schedule, and, moreover, that she is no longer willing to work with the City's attorneys to testify at trial in any event.  The latter factor renders this case distinguishable from *Heller v. Wofsey, Certilman, Haft, Lebow & Balin*, 1989 WL 140251 (S.D.N.Y., Nov. 13, 1989), in which the testimony of a merely unavailable – as opposed to unwilling - expert witness was presented via videotaped deposition.  Here, as in *Reda v. State*, 308 N.Y.S.2d 558, 561 (N.Y.Ct.Cl. 1970) (quoting CPLR Rule 25a(4)(b)), "the case of an unwilling expert witness is one involving 'unusual and substantial circumstances' and that failure to give relief in such a case would clearly 'cause

undue hardship.' To hold otherwise in such a case would significantly deny to the afflicted party the opportunity to have its day in court."

Given the importance of expert toxicology testimony to this case – as demonstrated by the parties' agreement to address toxicological issues at the beginning of Phase III – good cause exists for the City to be permitted to promptly substitute Dr. Rudo for Dr. Burns. Dr. Burns' sudden scheduling conflict and refusal to testify were not foreseen or foreseeable by the City, but the City will be prejudiced by the concomitant loss of her trial testimony unless this Court grants leave to substitute Dr. Rudo instead.

### D. Exxon Will Not Be Prejudiced By the Substitution of Dr. Rudo for Dr. Burns

No "prejudice to the opposing side will result" from the substitution of Dr. Rudo for Dr. Burns, because Exxon – indeed, a member of Exxon's trial team in this case – has already had the opportunity to test the sufficiency of Dr. Rudo's opinions. *See Ismail v. Cohen,* 706 F.Supp. at 255; *Carter-Wallace, Inc. v. Otte*, 474 F.2d at 535. In an affidavit submitted contemporaneously with this motion, Dr. Rudo states that he intends to offer the same expert opinions in this case that he offered in an earlier case, *Alban.* (Rudo Dec. at ¶ 12.) In *Alban,* Mr. Stack, who represents Exxon in this trial, deposed Dr. Rudo on substantially the same topics about which the City now proffers his testimony, cross-examined him extensively at trial over a three-day period and fully tested the sufficiency of his qualifications and testimony. (Rudo Dec. at ¶¶8-11). The references to scientific literature on which Dr. Rudo relies for his proffered opinions have all been produced to Exxon by the City as part of Dr. Burns' expert production. (*See* Exhibit B to Proposed Expert Report of Kenneth M. Rudo (Rudo Dec., Ex. 6).) Furthermore, the City is willing to make Dr. Rudo available for a deposition by Exxon at any time between now and the beginning of Phase III.

The testimony Dr. Rudo wishes to proffer, just like Dr. Burns', concerns the toxicity of MTBE at low levels generally and does not depend on the levels of MTBE that are present in particular City wells. (Proposed Expert Report of Kenneth M. Rudo at ¶¶3-6.) The substitution of Dr. Rudo therefore necessitates no case-specific discovery. This is consistent with the general principle that expert opinions can frequently be expressed equally well by more than one expert witness, in contrast to ordinary lay witnesses, who may have "unique knowledge of the facts" and cannot be exchanged. *See Carter Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1973) ("even if one particular expert is unavailable… there will usually be other experts available to give similar testimony orally"); *see also Carney-Hayes v. Northwest Wisconsin Home Care, Inc.,* 284 Wis.2d 56, 81 (2005) ("[i]n most fields, the answers to questions of this [expert] nature are not 'unique' or 'irreplaceable.' Another 'expert' in the appropriate field could answer such questions.")

Finally, not only are the opinions to be offered by Dr. Rudo in this case substantially the same as the opinions he offered in *Alban* and upon which he was cross-examined (Rudo Dec. at ¶ 9), but they are also substantially the same as the opinions described in Dr. Burns' previously-submitted expert reports. Both experts have come to the same conclusions on the following points:

- MTBE is a known animal carcinogen and a possible or probable human carcinogen. (Rudo Draft Report, ¶ 4; Burns Expert Report, pp. 5, 27-28.)
- MTBE in drinking water can give rise to certain cancers. (Rudo Draft Report, ¶ 4; Burns Expert Report, pp. 5, 40.)
- There is no safe level of MTBE exposure. (Rudo Draft Report, ¶ 4; Burns Expert Report, p. 5.)
- People are exposed to MTBE in drinking water via dermal exposure and vapor inhalation in addition to ingestion. (Rudo Draft Report, ¶ 5; Burns Expert Report, p.

   40.)

   - In order to protect public health, MTBE should be removed from drinking water. (Rudo Draft Report, ¶ 7; Burns Expert Report, p. 36.)

Exxon has already challenged the reliability of the foregoing opinions in its motion to exclude Dr. Burns' testimony.  But this Court, after examining the opinions and their underlying support, held that the opinions were reasonably supported, stating that "[Dr. Burns'] logic is clear.  If a substance damages DNA and causes cancer in animals, it could also damage human DNA, and therefore may also cause cancer in humans.  In support, Burns provides evidence that MTBE causes cancer in animals and damages DNA in animals, an evidentiary combination that this court has already held is sufficient to allow an expert to testify that MTBE may cause cancer." (7/31/09 Hearing Transcript, pp. 7-8.)  Dr. Rudo will make the same logical argument, as set forth in the accompanying Draft Report, and provides the same evidence that Dr. Burns provided to support his argument.  Exxon has already had the opportunity to challenge these opinions and will not be prejudiced by a change in the person delivering them.

  Presumably, Exxon has already prepared (or is planning to prepare) its defense to respond to these particular expert opinions.  (See Declaration of Nicholas G. Campins submitted concurrently herewith, Exhibit A.)  Given that – as outlined above – the opinions and anticipated testimony of both Dr. Burns and Dr. Rudo are substantially co-extensive, Exxon's rebuttal efforts are not wasted.  In the absence of a change to their substance, a mere change in the expert delivering these opinions should not mandate any alteration in Exxon's trial strategy or preparation.  Exxon thus cannot show that it will be prejudiced by the substitution the City proposes, and this Court should grant the City's request to substitute Dr. Rudo for Dr. Burns.

### III.   CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court issue an order granting the City leave to substitute Dr. Kenneth Rudo for Dr. Kathy Burns as a designated testifying expert.

Dated:  San Francisco, California
           August 13, 2009

        MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 788-1568


 /s/ *MARNIE E. RIDDLE*
VICTOR M. SHER *(pro hac vice)*
TODD E. ROBINS *(pro hac vice)*
JOSHUA G. STEIN *(pro hac vice)*
LESLEY E. WILLIAMS (LW8392)
NICHOLAS G. CAMPINS *(pro hac vice)*
MARNIE E. RIDDLE *(pro hac vice)*

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor,
Los Angeles, CA 90067
Telephone:  (310) 201-7493

*Attorneys for Plaintiff City of New York*